## STATE v. DAVIS.

1. EVIDENCE—PRACTICE—OBJECTION.—An attorney should object to an inadmissible question each time it is propounded to a different witness. *Dicta.*
2. IBID.—EXPERT—GUN.—Any person accustomed to the use of firearms, and who has observed their appearance after firing, may testify as an expert as to whether a gun has been recently fired.
3. IBID.—IBID.—A non-expert witness may sometimes give his opinion, when he first states the facts upon which it is based.
4. IBID.—IBID.—TRACKS.—A witness should not be permitted to say that in his opinion a track is that of defendant, but he may give peculiarities or measurements of defendant's shoe, and of the track.

Before KLUGH, J., Greenville, November term, 1898. Affirmed.

Indictment against Wm. Davis for murder. From verdict of guilty with recommendation to mercy and sentence thereon, defendant appeals.

*Messrs. Dean & Earle,* for appellant, cite: *Admission of testimony as to whether the gun had appearance of being recently fired improper, because witnesses were not shown to be experts:* 10 S. E. R., 965; 14 Ib., 262, 998; 80 N. Y., 301; 42 N. Y., 282; 16 S. W., 31. *Witness should not have been allowed to state that tracks corresponded with defendant's shoe:* 42 Am. R., 704; 23 So. R., 776; 40 S. C., 330.

*Mr. Assistant Attorney General U. X. Gunter,* for Solicitor Ansel, contra (oral argument).

June 22, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. Under an indictment for murder, the jury rendered a verdict of guilty with a recommendation to mercy, whereupon the defendant was sentenced to be confined in the penitentiary at hard labor for the term of his natural life.

From this judgment defendant appeals, taking the four

exceptions set out in the record, which, however, raise but two questions for the determination of this Court. The first, second and third exceptions all rest upon the same ground, and may, therefore, be considered together. They all impute error to the Circuit Judge in receiving the testimony of T. B. McWhite, J. W. Baker and J. B. Earle, as to the condition of the gun found lying near the body of the deceased, and the empty shell in the gun, and whether they exhibited such appearances as would indicate that the gun had been recently fired. The objection seems to be based mainly upon the ground that it should first have been made to appear that these three witnesses, the inadmissibility of whose testimony is claimed in exceptions one, two and three, respectively, were experts, before they were entitled to express any opinion upon the subject inquired about. It may be as well to state here that the record before us does not show that any objection was made to the testimony of any of these witnesses except the first, Mr. McWhite, or that any exception was taken except in that instance. But as counsel may have supposed (erroneously, as we think,) that, after the objection taken to the testimony of the first witness was overruled, it was unnecessary to repeat the objection when the other two witnesses were offered to testify to the same thing, we will not make any point as to that matter, in a case of such gravity as this is, but will assume for the purposes of this case only, that similar objections were made to the testimony of the other two witnesses, and similar exceptions taken to the rulings thereon. It is a mistake to suppose that there was no testimony tending to show that these witnesses were experts in regard to the matter about which they were permitted to testify. It is not necessary that one should be a scientist in order to qualify him to testify as an expert. As·is said in the authority cited by the assistant attorney general—7 Am. & Eng. Ency. of Law, 1st. ed., 491: "An expert is one who has made the subject upon which he gives his opinion a matter of particular study, practice or observation, and he must

have a particular and special knowledge on the subject."
Indeed, the derivation of the term "expert" implies that he is
one who, *by experience,* has acquired special or peculiar
knowledge of the subject of which he undertakes to testify,
and it does not matter whether such knowledge has been ac-
quired by the study of scientific works or by practical obser-
vation. Hence, one who is an old hunter, and has thus had
much experience in the use of firearms, may be as well quali-
fied to testify as to the appearance which a gun recently fired
would present, as a highly educated and skilled gunsmith.
Now all these witnesses testified that they were accustomed
to the use of firearms, and had observed the appearance
which a gun would present after having been recently fired,
and the substance of their testimony was to the effect that
neither the gun found lying near the dead body shortly after
the homicide was committed, nor the empty shell taken from
the gun, presented any of the appearances that would indi-
cate that the gun had been recently fired. It seems to us that
the testimony in question was clearly competent. But
in addition to this it was held in *Seibels* v. *Blackwell,*
McM., 56, that the opinions of even non-expert wit-
nesses may, sometimes, be received, after they had stated the
facts upon which they based their opinions. In that case,
the question was as to the unsoundness of a slave, and
O'Neall, J., in delivering the opinion of the Court, uses this
language: "I find that the witnesses generally said they
thought the slave to be unsound, and if they had stopped
there, such testimony ought to have been rejected; but they
go on to fortify their opinions with facts showing some
foundation for them; and hence they were admissible, and
were to be compared with the facts by the jury." So in this
case the witnesses stated the facts showing the reason why
they thought the gun had not been recently fired. The first,
second and third exceptions must be overruled.

The only remaining exception is the fourth, in which error
is imputed to the Circuit Judge in receiving the testimony as
to certain tracks seen going to and from the body of the

deceased towards the house of the defendant. As to this exception it may be said that, inasmuch as it was admitted by the defendant while on the stand that he had killed the deceased, claiming, however, that the deceased had fired upon him, and that he acted in self-defense, it would seem to be unimportant whether the testimony objected to was competent or not, as testimony in regard to tracks is most usually resorted to for the purpose of connecting the accused with the commission of the homicide, and as the fact of killing is, in this case, conceded, even if there was error in receiving the testimony as to the tracks, it would be harmless error. But there is one view of the testimony as to the tracks which might make it very material to the defendant's plea of self-defense. The version of the tragedy as given by the defendant while on the stand as a witness was that while gathering corn in his field for the purpose of feeding his hogs, he was fired upon by the deceased, and that he simply returned the fire, killing his antagonist. The fact that a gun containing an empty shell was found lying near the body of the deceased, a short time after the homicide was committed, was, no doubt, relied upon to corroborate the story of the prisoner. There was testimony, however, which was not disputed, that this gun belonged to a brother of the defendant, who lived in the same house with him; and we can readily conceive that the contention on the part of the State was that the prisoner, after committing the homicide, went to his house, procured the gun, and laid it near the body. Hence, in this aspect of the case, the testimony as to the tracks going to and from the dead body to the house of the prisoner, might become very important. We will, therefore, consider the question as to the competency of the testimony as to the tracks. It will be observed that the witness expressed no opinion that the tracks which he examined and followed, were the tracks of the prisoner. He simply described the tracks which he observed—spoke of a peculiarity as to the track of the right foot, which showed marks of tacks in the sole of the right shoe—that he measured the

tracks and afterwards measured the prisoner's shoes, and produced those measures before the jury, and that the right shoe of the prisoner had tacks in the sole which made marks corresponding with the marks he had observed in the tracks going to and from the dead body towards the prisoner's house. This testimony was clearly competent. See *State v. Green,* 40 S. C., 328, where Mr. Justice Pope, in delivering the opinion of the Court, uses this language: "It was clearly competent for him (the witness) to trace minutely before the jury the peculiarities of the foot of the accused, and also how these peculiarities were reproduced in the track the witness saw," but he should not have been permitted to go further and express the opinion that the track was made by the accused. It seems to us, therefore, that in any view which may be taken of the fourth exception, it must be overruled.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.